**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| Tracy Fortenberry, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 4:18-CV-1937-JCH |
| v. | ) | |
| | ) | |
| City of St. Louis *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendants City of St. Louis, Officer Mark West and Officer Andrew Collier file these reply suggestions in support of their Motion to Dismiss Plaintiff's Amended Complaint. Because Plaintiff has failed to state a plausible claim against the defendants, her complaint should be dismissed.

**I.     Plaintiff's amended Complaint does not assert facts by which one could begin to draw an inference that the Officer's conduct was the result of an unconstitutional policy or custom.**

Plaintiff's response attempts to clarify the deficient Amended Complaint's assertion that a custom of the St. Louis Metropolitan Police Department (SLMPD) to use force in unspecified situations caused Officers West and Collier to violate Ms. Fortenberry's rights. To support this Plaintiff provides a list of seven occasions in which she alleges that unknown officers used excessive force in unspecified situations (Doc. 6, ¶ 120(a)); a list of four situations in which she alleges that officers have provided false reports (Doc. 6, ¶ 120(c)); a conclusory allegation that the City does not discipline its

1

officers (Doc. 6, ¶ 120(b)); and an allegation that the city has settled "forty-something" cases for "injuries caused by its officers (Doc. 6, ¶ 122).

Fortenberry must plead enough facts that a Court could begin to draw an inference that the conduct complained of resulted from a policy or custom. *Doe ex rel. School Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). But "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Malone v. Hinman,* 847 F.3d 949 (8th Cir. 2017); see also *Board of County Commissioners v. Brown,* 520 U.S. 397, 405 (1997).

To impose municipal liability, other alleged misconduct must be very similar to the conduct giving rise to liability. *Livers v. Schenck*, 700 F.3d 340, 356 (8th Cir. 2012.); *see also Connick v. Thompson*, 563, U.S. 51 (2011). For a failure to train claim, facts must be asserted that demonstrate that the City of St. Louis's "failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Fortenberry offers no facts that suggest any of her cited prior incidents or lawsuits were similar to her case other than they involved police and the conclusory statement that some of them involved excessive force. Similarly, there are no allegations that any of the "forty-something" cases referenced in the amended complaint were even based on uses of force. (Doc. 6, ¶ 22). If, for example, any of these cited incidents occurred during a protest, they would involve a very different response and analysis than during a call regarding a potential mental health issue. So there is not a logical inference that can be drawn connecting the alleged conduct to any widespread custom.

II.     **The claims Officers West and Collier for unreasonable seizure and excessive force (Counts I and II) should be dismissed because they are barred by qualified immunity.**

a.      **The facts asserted by Fortenberry in the Amended Petition show that arguable probable cause was present for her seizure**

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and it "protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 4-5 (2013).

There are times in which a police officer may have to seize a person to protect the safety of the public and/or the individual as part of this community caretaking function. *Id.*; *citing United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993). For qualified immunity to attach, the officers only need to demonstrate arguable probable cause exists. *See Pitts v. City of Cuba*, 913 F. Supp. 2d 688, 725, (8th Cir. 2012)(internal quotation omitted). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." *Ulrich v. Pope County*, 715 F.3d 1054, 1059 (8th Cir. 2013)(internal citation omitted). "If there is probable cause, it is irrelevant if the suspect turns out to be noncommittable. The arrest is still legal." *Chathas v. Smith*, 884 F.2d 980, 987 (7th Cir. 1989).

The facts as explained in Fortenberry's response in opposition to this motion show that arguable probable cause existed to require Fortenberry to go to the hospital. Fortenberry believes that the event began because of a call made by a friend after she told that friend about her mental health issues and that she took extra medication. (Doc. 6, ¶¶ 14-18). Fortenberry then suggests that because the medical technicians relayed incomplete or inaccurate information to the doctor, the decision to send her to the

3

hospital violated her civil rights. (Doc. 10, 6-7). But when the medical technicians arrived, Fortenberry showed them the prescription bottle and gave them additional information. (Doc. 6, ¶ 22). The medical technicians with that information chose to call Dr. Polites to discuss the situation, after which the decision was made to require Fortenberry to go to the hospital.  (Doc. 6, ¶ 21-27). Defendants West and Collier were not plainly incompetent in requiring Fortenberry to go to the hospital after the medical technicians obtained relevant information and spoke to a doctor. Even if the information passed along was incorrect or incomplete, the facts alleged provide that *arguable* probable cause existed at this time. *See Ulrich v. Pope County*, 715 F.3d at1059. Fortenberry's response in opposition makes clear that any argument on arrest that occurred after Fortenberry walked out of the ambulance that was stopped at an intersection is not relevant to her claim for an unlawful seizure. So any claim for an unreasonable seizure beyond the initial decision to require her to go to the hospital should be dismissed.

### b.      Count VII should be dismissed because the facts pleaded demonstrate only a reasonable use of force on Fortenberry

There is no dispute that the Fourth Amendment provides the proper framework for the analysis of Fortenberry's excessive force claims. *Graham v. Conner*, 490 U.S. 386, 394 (1989) "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396 (internal citations omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id* at 397.

The only force that was used on Fortenberry came after she exited the ambulance, leading to her handcuffing. (Doc. 6, ¶¶36-61). By this time, Fortenberry had already exited the ambulance that she had been directed to enter, which was stopped at a traffic light, (Doc. 6, ¶¶ 33-35). This would mean that Fortenberry exited the ambulance into the middle of a road. (Doc. 6,¶ 33-35). Fortenberry's description of what happens once the officer arrives is not, in fact, contradictory to the officer's version. (Doc. 6, ¶¶ 37-57). Fortenberry does not dispute that she was not compliant with the Officers' commands; rather she attempts to provide an explanation from her point of view. (*Id.*). But the reasonableness of the Officers' actions must be viewed from the perspective of the officers. *See Graham v. Conner*, 490 U.S. at 394. Fortenberry left an ambulance that was in the middle of a road, even if stopped at a traffic signal, which poses a potential threat to her safety, and potentially those around her, which is only exacerbated by potential that a mental illness or medication were affecting the situation. (Doc. 6, ¶¶ 33-35; Doc. 10, p. 10). Only after she had been placed on the ground and in handcuffs did the resistance cease. (Doc. 6, ¶ 44). Placing her on the ground and in handcuffs was a reasonable decision and not a violation of the Fourth Amendment. So Officers West and Collier are entitled to qualified immunity on the excessive force claim and Count II should be dismissed.

### III.    Fortenberry's claims of civil conspiracy fail because the underlying claims upon which the conspiracy claim is premised fail.

Fortenberry's response in opposition does not overcome the deficiencies in her Amended Complaint as to the validity of her claims for violations of her civil rights. As demonstrated above, and in the memorandum in support of their motion, Fortenberry fails to state a claim under any count of the complaint for any civil rights violation. In

the absence of a violation, there is no actionable conspiracy claim. *Cook v. Tadros*, 312 F.3d 386, 388-89 (8th Cir. 2002)

Further, Fortenberry only provides a conclusory allegation, reasserted in the response in opposition that Defendant Collier's report is "false and deceptive." (Doc. 6, 45; Doc. 10, p. 2-3). But the Collier's report, as quoted in the amended complaint tells the same factual story as Fortenberry: that she would comply with attempts to walk to the ambulance, that the officer's took her to the ground on her stomach, and even that she complained of pain in her arm. (Doc. 6, ¶¶44). Fortenberry's descriptions of "excruciating pain," and "blood curdling screams," may indicate that she felt more pain than the officers perceived, but they do not constitute support for the denigrating assertion that the Officers have deceived or covered up the events. (Doc. 6, 45, Doc. 10, p. 2).

Because the complaint fails to state a claim for the underlying actions, plaintiff's civil conspiracy claim (Count III) against Officers West and Collier must fail, as it is not an independent cause of action.

**IV.    Official immunity bars the state law claims against Officer West and Officer Collier, so they should be dismissed.**

Fortenberry's Count V (assault), Count VI (battery), Count VII (intentional infliction of emotional distress); and Count VIII (negligent infliction of emotional distress) against Officers West and Collier should be dismissed because they are barred by official immunity.

Official immunity bars claims arising out of an officer's discretionary actions, though not ministerial actions. *Southers v. City of Farmington, Missouri,* 263 S.W.3d 603, 610 (Mo. 2008). There is no dispute as to whether the actions taken were

discretionary. (Doc. 10, p.13) But there are no facts alleged that could demonstrate a cognizable case that the actions were taken in bad faith or with malice. *See Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Id.*

Fortenberry states that the statements made by the officer regarding her marriage and political preferences (Doc. 6, ¶23), and the statements made when the Officers arrived to find Fortenberry had left the ambulance (*Id*. at ¶38) provide evidence of bad faith. Even accepting those allegations as true, the facts asserted do not support a claim for bad faith. The Officers did not request Fortenberry to go to the hospital without the opinions from the medical technicians. (Doc. 6, ¶¶25-27). They then only used force after she walked out of an ambulance into a street and would not comply with their commands. (*Id*. at ¶¶ 33-44). That use of force began only when Fortenberry did not comply with the officers commands, and ended when she ceased resisting. (*Id*.) The actions that are alleged in support of Fortenberry's state law counts are all discretionary, and there is no factual allegation that supports a claim for bad faith or malice. So the state law counts against the Officers should be dismissed.

## V.     The state law claims against the City are barred by sovereign immunity

Sovereign immunity renders public entities "immune from suit for their negligent acts unless the General Assembly has expressly waived such immunity." *Phelps v. City of Kansas City*, 371 S.W.3d 909, 912 (Mo. App. 2012).

Fortenberry's only asserted waiver of sovereign immunity is that the Public Facilities Protection Corporation (PFPC) is either a purchased insurance policy, or a

form of self-insurance. (Doc. 6, ¶¶ 130-31; 140-41; 152-53; and 161-62). Fortenberry has failed to carry her burden of establishing a waiver of sovereign immunity as she has set forth no facts which indicates that her claims fall within either the specific purposes "covered by such policy of insurance" or the specific "purposes provided in any self-insurance plan duly adopted by the governing body of any political subdivision of the state." §537.610 RSMo; *See also Hummel v. St. Charles City R-3 School Dist.,* 114 S.W.3d 282, 284 (Mo. App. E.D. 2003). ("Whether sovereign immunity is waived in a particular case depends on whether the plaintiff's claim falls within the purposes covered by the defendant's policy.") First, this cannot be a form of self-insurance because by definition, "self-insurance" involves no third party. There is nothing in the Amended Compaint to show that the City's reliance on the PFPC to pay claims is in fact the purchase of insurance or is a self-insurance plan duly adopted by the governing body of the City of St. Louis. §537.610.1, RSMo. It would be remarkable indeed if the City opted to "self-insure" intentional torts of its officers. Moreover, the Amended Complaint on its face indicates that the so-called PFPC is treated as though it were part of City government, so that it cannot be considered an insurance company as defined by law, Mo.Rev.Stat. §375.001.2(1). Finally, the Amended Complaint does not allege that the City's governmental body has adopted a self-insurance plan, as that would require an ordinance, and no ordinance is pleaded. Accordingly, Fortenberry's allegations that sovereign immunity has been waived in this case must fail.

## Conclusion

For the reasons stated above, Fortenberry has failed to state a claim upon which relief can be granted, and therefore, this case should be dismissed.

WHEREFORE, Defendant City of St. Louis prays the Court grant its Motion to Dismiss for Failure to State a Claim with prejudice, and for any further relief the Court deems just and reasonable.

Respectfully submitted,

JULIAN BUSH
CITY COUNSELOR

By: */s/ Brandon Laird*
Brandon Laird
Associate City Counselor
Mo Bar No. 65564
1200 Market Street, Room 314
St. Louis, Mo  63103
(314) 622-4652
(314) 622-4956 fax
lairdb@stlouis-mo.gov
*Attorney for Defendants City of St. Louis, West and Collier*

## CERTIFICATE OF SERVICE

I hereby certify this Entry was electronically filed on this 1st day of March 2019 with the Court for service by means of Notice of Electronic Filing upon all attorneys of record.

*/s/ Brandon Laird*
Brandon Laird
Associate City Counselor