UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRACY FORTENBERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:18-CV-01937-JCH |
| ) | |
| CITY OF ST. LOUIS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 7). This motion if fully briefed and ready for disposition.

## BACKGROUND

On November 19, 2016, Plaintiff Fortenberry alleges that she told an out-of-state friend that she had taken extra anxiety medication for stress. (Amended Complaint, ECF No. 6 ¶ 14). Later that evening, Defendants, Officers Collier and West (collectively "officer defendants"), arrived at Plaintiff's home reporting that they had "heard there was an accident." *Id.,* at ¶17. Plaintiff believed that her call to her friend prompted the defendant's to visit. *Id.*, at ¶ 18. Plaintiff and her then-wife explained that there was no accident and answered a few questions from the officer defendants who looked around the home and left. *Id.*, ¶¶ 19-20. Ninety (90) minutes later, officer defendants returned to Plaintiff's home with medical technicians. *Id.* at ¶ 21. Plaintiff showed the technicians her prescription bottle and explained that she had taken the allowable dosage hours earlier. *Id.* at ¶ 22.

1

Plaintiff alleges that while she was speaking to the medical technicians, she overheard the officer defendants making derogatory comments about her same-sex marriage. (ECF No. 6, at ¶ 23). The medical technicians called their supervisor, Dr. Polites at Barnes-Jewish Hospital, but did not relay information about Plaintiff's dosage. *Id.,* ¶¶ 25-26. Officer defendants then told Plaintiff that she had to go to the hospital for evaluation. *Id.,* at ¶ 27. Plaintiff asked to see documentation mandating her removal, officer defendants allegedly did not provide such documentation. *Id.*, ¶¶ 29-30. Plaintiff then boarded an ambulance unrestrained but when the ambulance stopped at a red light, the Plaintiff exited the ambulance. *Id.*, ¶¶ 32-35. Plaintiff walked to the side of the road intending to walk home. *Id.,* at ¶ 36. Officer defendants arrived at the scene soon thereafter. *Id.*, at ¶ 37.

Plaintiff alleges that one of the defendants started screaming at the Plaintiff. *Id.* at ¶ 38. In response to the defendant's alleged tone, the Plaintiff grew anxious and advised the defendants that their actions were triggering symptoms of Post-Traumatic Stress Disorder. *Id.,* ¶¶ 39-42. Plaintiff alleges that the officer defendants each grabbed one of Plaintiff's arms and forced her to the ground onto her back. *Id.,* ¶¶ 48-50. Plaintiff alleges that the officer defendants then flipped the Plaintiff over onto her stomach, causing her elbow to crack. *Id.*, ¶¶ 51-52. Plaintiff alleges that the officer defendants ignored her screams and handcuffed her hands behind her back. *Id.* at ¶ 56. Plaintiff alleges that she told the officer defendants that she was in pain, but the officer defendants shackled her to the ambulance's stretcher. *Id.,* ¶¶ 57, 61. Plaintiff had her broken arm treated at Barnes Jewish Hospital. *Id.,* ¶¶ 62-65. Plaintiff has undergone four surgeries for her elbow to remove bone fragments, repair ligaments and tendons and reposition nerves, resulting in possible irreversible nerve damage. *Id.* at ¶ 70-75.

Plaintiff raises the following claims:

I. Count I – Action under 42 U.S.C. §1983 for the violation of Plaintiff's right to be free from unreasonable search and seizure under the Fourth and Fourteenth Amendments against Officer Defendants.
II. Count II – Action under 42 U.S.C. §1983 for the violation of Plaintiff's rights under the Fourth and Fourteenth Amendments for Officer Defendants use of excessive force.
III. Count III – Action under 42 U.S.C. §1983 for conspiracy to deprive civil rights against Officer Defendants.
IV. Count IV – Action under 42 U.S.C. §1983 based on municipal liability against Defendant City for failure to train, failure to discipline, failure to supervise, and for a custom of conducting unreasonable seizures and using excessive force.
V. Count V – Missouri State Law claim for assault against all Defendants
VI. Count VI – Missouri State Law claim for Battery against all Defendants
VII. Count VII – Missouri State Law claim for Intentional Infliction of Emotional Distress against all Defendants
VIII. Count VIII – Missouri State Law claim for Negligent Infliction of Emotional Distress against all Defendants

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Allegations are to be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Federal Rule of Civil Procedure 10(b) provides that in his or her complaint:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.

Fed. R. Civ. P. 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." To survive a motion to dismiss a complaint must show that "'the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). See *also Erickson v. Pardus,* 551 U.S. 89, 93 (2007).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679 (citing Twombly, 550 U.S. at 556). The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant unlawfully harmed me accusation." Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Further, in regard to a Rule 12(b)(6) Motion, the Supreme Court holds:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citations omitted] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure ' 1216, pp. 235-236 (3d ed. 2004).

*Twombly*, 550 U.S. at 555. *See also Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) ("[A] plaintiff 'must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . . , rather than facts that are merely consistent with such a right.'") (quoting *Stalley v. Catholic Health Initiative*, 509 F.3d 517, 521 (8th Cir. 2007)).

Additionally, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly,* 550 U.S. at 556 (citation omitted). "The issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [his or her] claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (abrogated on other grounds, *Horlow v. Fitzgerald*, 457 U.S. 800 (1982)). With these principles in mind, the Court will consider Defendants' Motion to Dismiss.

## DISCUSSION

### I. Count IV Failure to State a Claim for Municipal Liability

Defendants allege that the Plaintiff has failed to assert facts that demonstrate any action by the City itself caused the harm suffered by the Plaintiff and therefore request that Count IV be dismissed. Defendant specifically contends that the Plaintiff has not pleaded sufficient facts to demonstrate a claim for municipal liability under *Monell*. (ECF No. 8 at 4). Defendants argue that the Plaintiff has not pled any facts to demonstrate that the City, either through action or inaction, was the driving force behind her alleged injuries. *Id.* at 5.

A municipality is liable under §1983 when the municipality itself violates a federal law or deprives a plaintiff of a constitutional right. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978). "[L]ocal governments are responsible only for their own illegal acts. They are not vicariously liable under §1983 for their employee' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011)(internal citations omitted). Liability occurs when the "execution of a government policy or custom…inflicts the injury that the government…is responsible under § 1983." *Monell,* at 694. There must be a causal connection between the municipality, the action, and the alleged constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 385. (1989).

A municipality has custom liability under *Monell* when the Plaintiff can establish, (a) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (b) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policy making officials after notice to the officials of the misconduct; and (c) proof that the moving force behind the constitutional violation was the custom. *Ware v. Jackson City., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998)(quoting *Jane Doe A v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir. 1990). To properly allege a claim for failure to

train, the Plaintiff must show that the City Defendant's "failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants. *Harris,* at 385. The insufficient training of a single officer is not enough. *Id.,* 390-91. To allege a claim for failure to supervise, the Plaintiff must show that the supervisor "demonstrated deliberate indifference or tacit authorization of the offensive acts." *Brockington v. City of Sherwood,* 503 F.3d 667,673 (8th Cir. 2007)(internal quotations omitted).

Plaintiff argues that the burden to state a claim for relief under *Monell* has been met. "When a Complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right." *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F. 3d 605, 614 (8th Cir. 2003). A plaintiff must only include "allegations, reference or language from which one could begin to draw an inference that the conduct complained of resulted from an unconstitutional policy or custom." *Teague v. St. Charles Cty.*, 708 F. Supp. 2d 935, 940 (E.D. Mo. 2010)(citing *Crumpley Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004)). Plaintiff argues that the following facts sufficiently establish the existence of a custom, and asserts that she will have more specific facts to point to following discovery. In support of her *Monell* claim, the Plaintiff alleges that continuing, widespread and persistent patterns of unconstitutional misconduct can be evidenced by: (a) the routine use of force by Defendant City's officers; (b) Defendant City's failure to punish officers liable for excessive force; (c) Defendant City's allowance of officers to hide their unconstitutional behavior; and (d) the allowance of officers to arrest citizens without probable cause. (ECF No. 6 at ¶ 120). Plaintiff further alleges that Defendant City has settled approximately forty (40) similar lawsuits between 2010 and 2016, but has failed to train officers liable of the use of excessive force. *Id.*, ¶¶ 120-23. Plaintiff argues that

the above facts, if taken as true, establish Defendant City's indifference or tacit authorization of unconstitutional conduct. Plaintiff further contends that she will specifically identify the constitutional violations most similar to those raised in her Complaint following discovery.

In reply, Defendant states that the Plaintiff has failed to provide any specific facts that suggest that the cited prior incidents or lawsuits were similar to her case and that Plaintiff's belief that some of these incidents involved excessive force is conclusory. (ECF No. 13 at 2). The Court agrees. While the Plaintiff must only provide information from which the Court could draw an inference that the alleged conduct arose from an unconstitutional policy or custom, the Plaintiff has not done so here. Plaintiff has failed to cite to any specific instances or policies to give rise to an inference of municipal involvement. Therefore, Count IV of Plaintiff's First Amended Complaint is dismissed.

## II. Qualified Immunity as to Defendants West and Collier for Counts I and II

Defendants assert that Officer Defendants are entitled to qualified immunity because the force used to restrain Plaintiff in this case was reasonable and because they had probable cause. The purpose for qualified immunity is to "give government officials breathing room to make reasonable but mistaken judgements," by "protecting all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims,* 134 S.Ct. 3,4-5 (2013). Plaintiff argues that qualified immunity does not apply in this case. (ECF No. 10, at 6).

The Fourth Amendment provides that people have a right to be free from unreasonable seizures of their persons without probable cause. U.S. Const. amend IV. Under the Fourth Amendment, a warrantless arrest is constitutional and, therefore reasonable if it is supported by probable cause. *Ulrich v. Pope Cty/*, 715 F.3d 1054, 1059 (8th Cir. 2013) (citing *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011)). In the context of mental health, "the proper

inquiry is whether probable cause existed at the moment…[the plaintiff] was 'seized' for evaluation." *Graham v. Barnette*, 17-cv-2920-JNE/SER 2018, WL 6592666 *9 (D. Minn. December 14, 2018)(citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964). To gain the protection of qualified immunity, an officer must have arguable probable cause for the seizure. *Ulrich*, 715 F.3d at 1059 (quoting *Borgman*, 646 F.3d at 523). "Probable cause exists "when the totality of the circumstances at the time of the arrest is sufficient to lead a reasonable person to believe that the defendant [in this case the Plaintiff] has committed or is committing an offense. *Ulrich,* 715 F.3d at 1059.[1] Arguable probable cause exists when "an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable'" *Id.* An officer cannot claim qualified immunity if she knew or reasonably should have known that her action would violate the Plaintiff's constitutional rights. *Engleman v. Deputy Murray*, 546 F.3d 944, 947 (8th Cir. 2008)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)).

Defendant argues that Count I should be dismissed because Officer Defendants had arguable probable cause. Defendant asks the Court to apply the community caretaking principal to this case.[2] (ECF No. 8 at 7). Plaintiff asserts that based on the facts alleged arguable probable cause does not exist. Plaintiff alleges that the Officer Defendants appeared at her home on November 19, 2016 because Plaintiff told an out-of-state friend that she had taken extra anxiety medication. (ECF No. 6, ¶¶ 14, 18). Plaintiff and her wife told the Officer Defendants that nothing was wrong. *Id.* at ¶ 19. Officer Defendants left the home and returned approximately ninety (90) minutes later with two medical technicians. *Id.* at ¶ 21. Plaintiff advised the medical technicians that she had taken the medication hours earlier and that the dosage was allowable for

---

[1] Distinguished in part by *Johnson v. City of Minneapolis*, 901 F.3d 963 (8th Cir. 2018).
[2] There are instances in which a police officer may have to briefly detain a person to protect the safety of the public and/or the individual as part of their community caretaking function. *Winters v. Adams*, 254 F.3d 758, 763(8th Cir. 2001)(citing *United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993).

a woman of her age and size. *Id.* at ¶ 22. The medical technicians then failed to relay the information provided to them by the Plaintiff about dosage to their supervisor. *Id.*, ¶¶ 25-26. The Officer Defendant's seized the Plaintiff for hospital evaluation. *Id.* at ¶ 27. Plaintiff argues that based on these facts, a reasonable person would not believe that the Plaintiff was a danger to others, and therefore, probable cause does not exist, nor was it objectively reasonable that the Officer Defendants thought that they had probable cause. (ECF No. 10, at 7).

"The right to be 'free from excessive force in the context of an arrest is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures.'" *Nance v. Sammis,* 586 F.3d 604, 611 (8th Cir. 2009)(quoting *Samuelson v. City of New Ulm,* 455 F.3d 871, 877 (8th Cir. 2006)). Plaintiff's claim for excessive force is also governed by the Fourth Amendment. "Claims that law enforcement officers have used excessive force…in the course of an arrest, investigatory stop or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Conner,* 490 U.S. 386, 394 (1989). Reasonableness of force is determined from the perspective of a reasonable officer on the scene, rather than through the lens of hindsight. *Id.,* at 396. In determining reasonableness, the Court may look to factors such as, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer's or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013)(quoting *Graham,* 490 U.S. at 396). "'[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public.'" *Small*, 708 F. 3d at 1005(quoting *Brown v. City of Golden Valley,* 574 F.3d 491, 499 (8th Cir. 2009).

Defendant argues that the only use of force was placing the Plaintiff in handcuffs after she left the ambulance; and that it followed Plaintiff's failure to be compliant with the directives of the Officer Defendants. (ECF No. 8 at 9, citing ECF No. 6, ¶¶ 43-51). Plaintiff argues that the Defendants have disregarded large portions of the Plaintiff's First Amended Complaint. (ECF No. 10, at 9). Plaintiff asserts that Officer Defendants screamed profanities at her; grabbed Plaintiff by each arm and forced her to the ground; flipped the Plaintiff onto her stomach; and shattered her elbow. (ECF No. 6, ¶¶ 38, 48-49, 51-55). Plaintiff further alleges that the Officer Defendants ignored her screams of pain, bent her broken elbow and handcuffed her arms behind her back. *Id.,* ¶¶ 54-56. Finally, Plaintiff alleges that against the direction of one of the medical technicians the Officer Defendants handcuffed the Plaintiff's injured arm to the ambulance stretcher. *Id.,* at ¶ 61. Plaintiff contends that in light of this being a mental health related seizure, Officer Defendants' response of violence rather than de-escalation is unreasonable. (ECF No. 10, at 9).

Law enforcement officers are permitted to use "some degree of physical force, or threat thereof, to affect a lawful seizure…and reasonable applications of force may well cause pain or minor injuries with some frequency." Chambers, 641 F.3d at 907 (citing Graham, 490 U.S. at 396). The degree of injury is indicative of "the amount and type of force used." *Chambers v. Pennycook,* 641 F.3d 898, 906 (8th Cir. 2011). An officer cannot claim qualified immunity if he knew or reasonably should have known that his conduct would violate plaintiff's constitutional right. *Engleman v. Deputy Murray*, 546 F.3d 944, 947 (8th Cir. 2008)(citing, *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)). "Long standing or permanent injury is excessive" *See, Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006)(finding "relatively minor scrapes and bruises and less-than-permanent aggravation of a prior shoulder condition were de minimus

10

injuries that support the conclusion that [an officer] did not use excessive force"); *and see, Foster v. Metro Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990)(finding "allegations of pain as a result of being handcuffed without some evidence of more permanent injury, are [in]sufficient to support [a] claim of excessive force"). Plaintiff alleges that the Officer Defendants caused more than minor injury to the Plaintiff. Plaintiff alleges that as a result of the Officer Defendants' conduct she had to undergo four surgeries on her elbow, and suffered an additional injury to her shoulder. (ECF No. 6, ¶¶ 70-74).

The Court finds that a determination regarding the Officer Defendants' defense of qualified immunity as to Counts I and II would be premature at this juncture and would be more appropriately taken up on a Motion for Summary Judgement. Therefore, Counts I and II of Plaintiff's Amended Complaint will not be dismissed at this time.

### III. Count III - Civil Conspiracy

Defendant argues that if Counts I and II fail then Count III for civil conspiracy ought to fail because civil conspiracy is not an independent cause of action. (ECF No. 8, at 10). Under §1983, to bring a conspiracy claim the plaintiff must allege (a) the officers conspired to deprive the plaintiff od a constitutional right; (b) at least one co-conspirator engaged in an overt act in furtherance of the conspiracy; and (c) the overt act injured the plaintiff. *Helmig v. Fowler,* 828 F.3d 755,763 (8th Cir. 2016)(citing *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)).

Plaintiff asserts that she has pled facts sufficient to bring a claim for civil conspiracy. Plaintiff alleges that Officer Defendants conspired to deprive her from the right to be free from unreasonable seizure and from excessive force; that in furtherance of this conspiracy Officer Defendants seized Plaintiff without probable cause, broke her arm and handcuffed Plaintiff's broken arm; and then drafted a false police report to cover up their constitutional violations.

(ECF No. 6, ¶¶ 113(a)-(c)). Defendant argues that the police report tells the same factual story as the Plaintiff- that she would not comply with attempts to walk to the ambulance and that she was taken to the ground on her stomach and complained of Pain in her arm. (ECF No. 13 at 6). Defendant states that Plaintiff's descriptions of her pain and screams merely indicate that she felt more pain than could have been perceived by the Officer Defendants, and that this does not support Plaintiff's assertion that the Officer Defendants attempted to cover up the events. *Id.*

The Court finds that a determination on Count III, civil conspiracy, requires a more complete record and would be more appropriately taken up on a Motion for Summary Judgement. Therefore, Count III of Plaintiff's Amended Complaint will not be dismissed at this time.

**IV.     Counts V-VIII: Official Immunity and Sovereign Immunity**

Defendants have not challenged the sufficiency by which Plaintiff has pled her claims for assault, battery, intentional infliction of emotional distress or negligent infliction of emotional distress. Rather, Defendants' assert a defense with regard to Counts V-VIII through sovereign and official immunity. Defendants argue that official immunity bars any state law claims against the Officer Defendants and sovereign immunity bars Plaintiff's state law claims against the City of St. Louis.

Officers may be entitled to official immunity for claims related to discretionary not ministerial acts, performed within the scope of their authority. *Southers v. City of Farmington, Mo*, 263 S.W.3d 603, 610 (Mo. 2008). An act that requires the exercise of reason and judgement to determine a course of action is discretionary. *Green v. Denison*, 738 S.W.2d 861, 865 (Mo. 1987). Plaintiff does not contest that the Officer Defendants' actions were discretionary. Official immunity will not apply to "'discretionary acts done in bad faith or with malice.'" *Davis v.*

12

*White,* 794 F.3d 1008, 1013 (8th Cir. 2015)(quoting *Blue v. Harrah's North Kan. City, LLC*, 170 S.W.3d 466, 479 (Mo. App. 2005)). "'A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.'" *Davis,* 794 F.3d at 1013 (quoting *State ex rel. Twiehaus v. Adolf,* 706 S.W.2d 443, 447 (Mo. banc. 1986)). Bad faith means "conscious wrongdoing" or "breach of a known duty through some ulterior motive." *Id.*

Defendants argue that the Plaintiff has only submitted conclusory statements regarding the malice or bad faith of the Officer Defendants. (ECF No. 8, at 12). Plaintiff alleges that Officer Defendants made disparaging remarks about her same-sex marriage; disdainfully tossed a possession that reflected the Plaintiff's political viewpoint; used obscenities when they addressed her; ignored her screams of pain; and ignored the advice of a medical technician about Plaintiff's condition. (ECF No. 6, ¶¶ 23, 38, 49-52, 54, 56-57, 61). Plaintiff alleges that these actions evidence that the Officer Defendants were fueled by disdain for her lifestyle, and political views, and were angry at "being inconvenienced by a person with a possible mental illness." (ECF No. 10 at 14). Plaintiff asserts that an officer of reasonable intelligence would recognize that consciously or intentionally injuring a citizen for annoyance or ideological disagreement is a violation of an officer's duties. Plaintiff asserts that therefore the Officer Defendants acted in bad faith or with malice and Counts V through VIII should not be dismissed due to official immunity. *Id.*

"A municipality is completely immune from liability arising from its performance of acts classified as governmental functions, unless a specific exception applies or the municipality specifically waives the immunity. *Parish v. Novus Equities Co.,* 231 S. W. 3d 236, 242 (Mo. App. 2007). A Plaintiff must plead specific facts demonstrating that the municipality has waived

sovereign immunity for his or her claims. *Parish*, 231 S.W.3d at 242 (citing *Hummel v. St. Charles City R-3 Sch. Dist.*, 114 S.W.3d 282, 284 (Mo. App. 2003). A municipality can waive sovereign immunity by purchasing liability insurance, but the plaintiff's claim must be covered under the insurance policy. *State v. Rel. Bd. Of Trustees of Cty. Of Kansas Cty, Mem'l Hospital v. Russell*, 843 S.W.2d 353, 360 (Mo. 1992).

Plaintiff in her First Amended Complaint asserts that the Defendant City self-insures through the Public Facilities Protection Corporation ("PFPC") to "insure the city against *all claims*." (ECF No. 6, ¶¶ 131-32, 141-42, 153-54, 162-63; ECF No. 6-1 at 1)(emphasis added). Attachment to Plaintiff's Amended Complaint provides that the Defendant City uses PFPC funds to settle its liability in cases of police misconduct (ECF No. 6-1, at 1). Defendants argue that Plaintiff has not established waiver of sovereign immunity because she has not indicated that her claims fall within the specific purposes "covered by such policy of insurance" or the specific purposes "provided in any self-insurance plan duly adopted by the governing body of any political subdivision of the state." §537.610 RSMo; *see also, Hummel v. St. Charles City R-3 School Dist.,* 114 S.W.3d 282, 284 (Mo. App. E.D. 2003)("Whether sovereign immunity is waived in a particular case depends on whether the plaintiff's claim falls within the purposes covered by the defendant's policy.").

Defendants additionally argue that the Plaintiff has not shown that the Defendant City's reliance on PFPC to pay its claims is a purchase of insurance or a self-insurance plan adopted by the governing body of the City of St. Louis. §537.610.1 RSMo. Plaintiff alleges that the "'Mayor, the President of the Board of Alderman, "the Comptroller, the Budget Director, and the City Counselor of the City of St. Louis or their respective designees are directors of the PFPC,' and Defendant City's Board of Estimate and Apportionment approve PFPC plans. (ECF No. 10,

14

at 15, citing ECF No. 6-1). Defendants argue that this characterization of the PFPC treats it as though it were part of the City government and therefore cannot be considered an insurance company as defined by law. Mo. Rev. Stat. §375.001.2(1). Defendant further argues that for the City government to adopt a self-insured plan it would need to pass an ordinance and no such ordinance exists.

The Court will not dismiss Counts V-VIII of Plaintiff's Amended Complaint. A more complete record is necessary to dispose of Defendants' Defenses in this case. Therefore, the raised issues of Official Immunity and Sovereign Immunity are more appropriate for a Motion for Summary Judgement.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Count IV of Plaintiff's Amended Complaint (ECF No. 6) for civil conspiracy is **DISMISSED.**

Dated this 18th day of March, 2019.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE